No. 80,337

DANIAL C. BATTRICK, *et al., Appellants,* v. STATE OF KANSAS, *et al., Appellees.*
(985 P.2d 707)

Opinion filed May 28, 1999.

*Paula D. Hofaker,* of Logan, argued the cause and was on the brief for the appellants.

*Robert E. Wasinger,* legal counsel for Department of Corrections, Norton Correctional Facility, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: Three consolidated K.S.A. 1998 Supp. 60-1501 habeas corpus cases challenge the constitutionality of K.S.A. 1998 Supp. 60-1501(b). The pro se habeas petitions of Danial C. Battrick, Phillip L. Harris, and Roy Gonzales were dismissed. The district court found that they were not filed within the 1501(b) 30-day period. The petitioners seek to have us reverse, claiming the 30-day limitation is unconstitutional.

Petitioners claim the 1501(b) 30-day limitation is: (1) a bill of attainder; (2) an unconstitutional limit on access to the courts; and (3) a suspension of the writ of habeas corpus. We hold that K.S.A. 1998 Supp. 60-1501(b), on the record presented here, is constitutional on its face. Petitioners' claims are denied.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

## FACTS

Two of the petitioners, Battrick and Harris, seek to appeal final decisions from disciplinary hearings at the Norton County Correctional Facility (the facility). Gonzales, also an inmate at the facility, seeks review of the denial of his parole.

Battrick alleges he lost 22 days of good time and spent 20 days in disciplinary segregation. The underlying facts of his disciplinary action do not appear in the record; however, Battrick alleges that the medical staff of the facility was at fault.

Harris claims an unspecified amount of his good time was deducted along with an undisclosed amount of money from his prison trust account. He contends that the facility is not following its own rules by finding prisoners guilty of disciplinary infractions without sufficient proof. Harris also claims that he has been subject to "reprisals" from prison officials who have told him to drop his complaints. According to Harris, the alleged reprisals have taken the form of repeated "shakedown" searches of his cell.

Gonzales received a 10-year to life sentence. The first date he was eligible for parole was April of 1990. Gonzales claims he has been consistently passed over by the parole board. The stated reason has remained the same: "serious nature and circumstances of the crime [rape]; history of criminal activities." Gonzales complains that the parole board has failed to state in detail the specific reason for denying parole.

Each petitioner, represented by counsel, was present at his district court hearing. The cases were submitted on exhibits, a written memorandum of authorities, and oral argument. Neither petitioners nor any other witness testified. All three petitions were filed more than 30 days from the date of final administrative action. (Approximately 3 months for Battrick, 2 months for Harris, and 4 months for Gonzales). The 1501(b) 30-day limitation was asserted in each case, through motions to dismiss, as a time bar by the Department of Corrections (D.O.C.). The motions were granted by the district court.

## DISCUSSION

We initially set out the two relevant provisions of the statute. K.S.A. 1998 Supp. 60-1501 provides:

"(a) Subject to the provisions of K.S.A. 60-1507, and amendments thereto, any person in this state who is detained, confined, or restrained of liberty on any pretense whatsoever, and any parent, guardian, or next friend for the protection of infants or allegedly incapacitated or incompetent persons, physically present in this state may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place. No docket fee shall be required, as long as the petitioner complies with the provisions of subsection (b) of K.S.A. 60-2001 and amendments thereto.

"(b) Except as provided in K.S.A. 60-1507, and amendments thereto, *an inmate in the custody of the secretary of corrections shall file a petition for writ pursuant to subsection (a) within 30 days from the date the action was final, but such time is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies.*" (Emphasis added.)

A review of our responsibility when the constitutionality of a statute is questioned is appropriate. The constitutionality of a statute presents a question of law. *State v. Heironimus*, 262 Kan. 796, 802, 941 P.2d 1356 (1997). We have unlimited review. A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, we must do so. A statute must clearly violate the constitution before it may be struck down. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). Mindful of our responsibility in constitutional review, we turn to the specific issue asserted by petitioners, the constitutionality of the 1501(b) 30-day limitation.

Habeas corpus is a statutory remedy on both a federal and state basis. See Coffman, *Habeas Corpus in Kansas: The Great Writ Affords Postconviction Relief at K.S.A. 60-1507*, 67 J.K.B.A. 16 (Jan. 1998); Coffman, *Habeas Corpus in Kansas: How is the Great Writ Used Today?* 64 J.K.B.A. 26 (Jan. 1995).

The habeas issue here is limited. We focus on two inmate 1501 actions arising from administrative disciplinary convictions (Harris and Battrick) and one parole denial (Gonzales). A K.S.A. 60-1507 habeas corpus action, mounting a collateral attack on a conviction or challenging a sentence, and certain other 1501 actions have no filing time limitations.

### Constitutional Provisions

The United States Constitution provides: "The Privilege of the

Writ of Habeas Corpus shall not be suspended unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. 1, § 9. The fundamental importance of habeas corpus was emphasized by the Supreme Court in *Johnson v. Avery*, 393 U.S. 483, 485, 21 L. Ed. 2d 718, 89 S.Ct. 747 (1969) (a prisoner rights case). In *Bowen v. Johnston*, 306 U.S. 19, 26, 83 L. Ed. 455, 59 S.Ct. 442 (1939), the Court said: "[T]here is no higher duty than to maintain [the writ of habeas corpus] unimpaired."

The Kansas Constitution provides that "[t]he right to the writ of habeas corpus shall not be suspended, unless the public safety requires it in case of invasion or rebellion." Kan. Const. Bill of Rights, § 8. " 'The writ is not and never has been a static, narrow, formalistic remedy. Its scope has grown to achieve its purpose—the protection of individuals against erosion of the right to be free from wrongful restraints on their liberty.' " *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 206, 708 P.2d 977 (1985) (quoting 39 Am. Jur. 2d, Habeas Corpus § 11, p. 185).

## Legislative History

With the constitutional foundation of habeas corpus in place, we turn to the legislative history of 60-1501(b). The 30-day limitation was added in 1994. L. 1994, ch. 227, § 3. Section 3 of H.B. 2832 as originally introduced contained a 2-year limitation. The D.O.C. in testimony before the House Judiciary Committee commented: "For inmate disciplinary cases, a much shorter period of time, such as 30 days from the date the action became final, may be more appropriate than the two year period." Testimony of Kansas Department of Corrections, House Judiciary Committee (February 16, 1994).

According to the chief counsel for D.O.C.,

"[t]he statute of limitation period of 30 days as proposed in the bill is intended to address those areas where a final order has been entered, such as a parole revocation action, a parole denial, or a disciplinary conviction. Challenges of mistreatment of a continuing or probably continuing nature would not be limited by such a statute of limitation. The 30 day limit is the same as private citizens would face in challenging a final order of an agency. K.S.A. 77-613." Memorandum to Senator Pat Ranson from Charles E. Simmons, Chief Legal Counsel, Kansas Department of Corrections (March 18, 1994).

K.S.A. 77-613, referenced by Simmons, is part of the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* We note that the KJRA does not apply to either the D.O.C. or the parole board. See K.S.A. 77-603(c)(1) and (2).

Representative Kenny Wilk stated that the intent of House Bill 2832 was to reduce the number of frivolous lawsuits in the state of Kansas. Minutes of the House Judiciary Committee (February 16, 1994). The Attorney General and the D.O.C. apparently intended that the 30-day limitation apply only to appeals from parole denials or revocations and disciplinary convictions. While it is arguable whether that intent was clearly translated into the statute, we do not address the breadth of 1501(b) applicability here. We agree that the 30-day limit applies to petitioners.

The constitutionality of the 1501(b) 30-day limit has not been directly addressed. *Peters v. Kansas Parole Board*, 22 Kan. App. 2d 175, 915 P.2d 784 (1996), discusses the applicability of the 30-day limit but not the constitutionality of the statute. *Peters* framed the issue as whether the inmate "had a 'reasonable time after the enactment of the statute' to file his petition for writ of habeas corpus." 22 Kan. App. 2d at 178. The Court of Appeals held the statute applied to Peters, citing the general rule that " 'where a statute creates a period of limitations where none had previously existed, the period will begin to run with respect to preexisting claims, on the effective date of the statute.' " 22 Kan. App. 2d at 179 (quoting *Superior Engraving Co. v. National Labor Rel. Bd.*, 183 F.2d 783, 789 (7th Cir. 1950), *cert. denied* 340 U.S. 930 [1951]). The constitutional issue is now squarely before us.

## A Bill of Attainder

We initially consider and dispose of the bill of attainder claim. Petitioners assert K.S.A. 1998 Supp. 60-1501(b) is a bill of attainder because it "deprives an easily ascertainable group of individuals of certain basic and fundamental civil rights, thereby punishing them without [the] benefit of a judicial trial." The argument fails. K.S.A. 1998 Supp. 60-1501(b) does not contain a bill of attainder's three necessary elements: (1) specificity in identification of individuals

affected; (2) punishment; and (3) lack of a judicial trial. See *State v. Thompson*, 221 Kan. 165, 173, 558 P.2d 1079 (1976) (citing *United States v. O'Brien*, 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 [1968]).

Petitioners claim K.S.A. 1998 Supp. 60-1501(b) is punitive. They reason "[t]he punishment is evident in that it is the punishment that they are arguing against in their habeas petition and the inmates receive further punishment by having their habeas petitions dismissed because they did not file within the 30 days." The punishment that the petitioners "are arguing against" apparently refers to the disciplinary actions and denial of parole that were the subjects of their 1501 motions.

K.S.A. 1998 Supp. 60-1501(b) is a statute of limitations. Generally, "[s]tatutes of limitation are considered to be remedial rather than substantive in that they bar only the remedy and not the right." *In re Estate of Forrester*, 13 Kan. App. 2d 98, 100, 762 P.2d 198, *rev. denied* 244 Kan. 737 (1988). The entire purpose of K.S.A. 1998 Supp. 60-1501 is remedial; it provides relief to those claiming wrongful restraint. K.S.A. 1998 Supp. 60-1501(b) does not punish conduct; rather, it provides a means to redress perceived wrongs. K.S.A. 1998 Supp. 60-1501(b) is not punitive.

### Other Jurisdictions

The case law we have reviewed from other jurisdictions is not helpful in resolving the remaining issues here. Petitioners have not cited one factually similar case that would support their constitutional claim. K.S.A. 60-1507 controls Kansas habeas relief for sentencing issues and collateral attacks on convictions. K.S.A. 60-1507 carries no time limitation on filing; thus, none of the following inmate fact situations from sister states would raise a time bar question in Kansas. A sample review is appropriate to assist in emphasizing the narrow focus of the issue now before us: final administrative disciplinary actions and parole denials.

A statute of limitations on habeas actions was struck down under an "open courts" provision of Utah's Constitution. *Currier v. Holden*, 862 P.2d 1357 (Utah App. 1993), *cert. denied McClellan v. Holden*, 870 P.2d 957 (1994). The *Holden* petitioners, claiming

ineffective assistance of counsel, challenged the constitutionality of a Utah statute which provided a 3-month limitation for filing habeas petitions. The Utah Legislature, after *Holden,* increased the limitation period to 1 year and included a provision allowing a court to excuse a petitioner's failure to file within the time limitation " 'if the court finds that the interests of justice require.' " *Julian v. State,* 966 P.2d 249, 251, n.3 (Utah 1998) (citing Utah Code Ann. § 78-35a-107(3) [1996]).

*People v. Germany,* 674 P.2d 345 (Colo. 1983), invalidated statutes of limitations (6 months for petty offenses, 18 months for misdemeanors, 3 years for felonies, and no limitation for Class 1 felonies) which, subject to a few exceptions, provided an absolute time bar to collateral attacks on the validity of convictions. 674 P.2d at 351. A decade later the Colorado Supreme Court upheld a statute with the same time limitations. The new statute, however, contained a " 'justifiable excuse or excusable neglect' " exception. *People v. Wiedemer,* 852 P.2d 424, 429 (Colo. 1993).

Iowa rejected the contention that a 3-year limitation for the filing of post-conviction relief violated the constitutional prohibition against the suspension of writs of habeas corpus or due process. *Davis v. State,* 443 N.W.2d 707, 710 (Iowa 1989). The claim in *Davis* was ineffective assistance of counsel.

Other courts have also upheld their respective statutes of limitations by reasoning that a state can impose reasonable time restrictions on a constitutional right. See *Day v. State,* 770 S.W.2d 692, 695 (Mo. 1989), *cert. denied sub nom. Walker v. Missouri,* 493 U.S. 866 (1989) (finding the 90-day limit on the right to file for post-conviction relief to challenge a conviction valid and reasonable); *Bartz v. State of Oregon,* 314 Or. 353, 366, 839 P.2d 217 (1992) (finding the 120-day limit for the filing of post-conviction claims is reasonable and does not suspend habeas relief or violate due process on an ineffective assistance of counsel claim); *Personal Restraint of Runyan,* 121 Wash. 2d 432, 445, 853 P.2d 424 (1993) (finding the 1-year limitation on the filing of post-conviction petitions does not suspend the writ or violate equal protection principles because it preserves the core of habeas corpus by providing several exceptions to pursue collateral relief; *Runyan* involved a

claim of ineffective assistance of counsel and prosecutorial misconduct).

## Access to the Courts

Petitioners argue that a state may not limit an inmate's access to the courts. Petitioners rely exclusively on federal case law to support their claim that K.S.A. 1998 Supp. 60-1501(b) is unconstitutional, specifically *Ex parte Hull*, 312 U.S. 546, 85 L. Ed. 1034, 61 S. Ct. 640 (1941), and *Johnson v. Avery*, 393 U.S. 483.

*Ex parte Hull* involved a state regulation requiring that habeas corpus petitions first be submitted to prison authorities and approved by an investigator as "properly drawn." 312 U.S. at 549. The Supreme Court invalidated the regulations as an improper abridgment of a petitioner's right to apply to a federal court for a writ of habeas corpus.

Similarly, *Avery* involved a prison regulation forbidding prisoners from helping others in the preparation of habeas writs. Johnson, a prisoner, violated the rule by assisting others. Johnson was transferred to a maximum security facility where he was entitled to fewer privileges than ordinary prisoners. The Court invalidated the regulation. Following *Ex parte Hull*, *Avery* held that the "Great Writ" of habeas corpus' fundamental purpose is "to enable those unlawfully incarcerated to obtain their freedom." 396 U.S. at 485. *Avery* further held that the fundamental purpose should not be undermined by denying prisoners access to the courts to present their complaints. 396 U.S. at 485. Both *Hull* and *Avery* hold that a prisoner's right to apply to a *federal* court for habeas corpus cannot be abridged. The facts of *Ex parte Hull* and *Avery* are dissimilar from the facts here. *Hull* and *Avery* dealt with prison regulations that interfered with an inmate's ability to file a federal habeas petition.

The right of court access means a reasonable opportunity to present a judicial claim. *Michel v. Louisiana*, 350 U.S. 91, 93, 100 L. Ed. 83, 76 S. Ct. 158 (1955). Prisoners possess the right of court access for the purpose of redressing constitutional violations. *Procunier v. Martinez*, 416 U.S. 396, 419, 40 L. Ed. 2d 224, 94 S.Ct.

1800 (1974), *overruled on other grounds Thornburgh v. Abbott*, 490 U.S. 401, 413-14, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989).

We have adopted an "open courts" principle. See *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 686 P.2d 171, *cert. denied sub nom. Smith v. Kansas*, 469 U.S. 1088 (1984). *O'Keefe* involved a district judge who was appointing prisoners to represent other prisoners in district court proceedings. The State sought a writ of mandamus directing the judge to cease this practice. We issued the writ, holding: "The right to be heard does not guarantee an indigent prisoner the right to counsel in a civil action. It does prevent the denial or undue restriction of prisoners' reasonable access to the courts." 235 Kan. at 1029. We said:

> "The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. . . . In light of this guarantee, it is the policy and the obligation of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard." 235 Kan. at 1027.

*O'Keefe* requires us to take a close look at K.S.A. 1998 Supp. 60-1501(b) in an "open courts" analysis. We also examine *Ernest v. Faler*, 237 Kan. 125, 697 P.2d 870 (1985), although neither case was cited by petitioners. In *Faler*, we struck down a 60-day "notice of claim" statute: K.S.A. 2-2457 (Ensley). A party injured by crop dusters had to give notice within 60 days of discovery of the damage in order to maintain a civil damage action. 237 Kan. at 126. A special notice form was to be filled out and served on the county attorney, who would then serve notice on the Secretary of Agriculture and on the potential defendant. We found the notice requirement an unreasonable denial of due process as well as a denial of equal protection. We held: "The statute now before us, in our judgment, creates an unreasonable barrier and impediment to a civil remedy which simply is not fair and reasonable under the circumstances." 237 Kan. at 134.

*Faler* could be advanced to support petitioners' claim that K.S.A. 1998 Supp. 60-1501(b) is an unconstitutional limitation on an inmate's access to the courts. The argument would be, if a 60-day

"notice of claim" requirement is an unreasonable barrier and impediment to a tort claim, it follows that a 30-day statute of limitations on a fundamental right such as habeas corpus is as well. However, a close reading of *Faler* shows that its rationale is not in conflict with the result we reach here. In *Faler* we considered the 60-day requirement to be a "vain and useless act and clearly a trap for the unwary." 237 Kan. at 135. We said: "K.S.A. 2-2457 is unreasonable because it bars a cause of action for civil damage sixty days after the date the damage is discovered, even though the injured party may not know and has no reasonable way of knowing that a pesticide was the *cause* of his injuries." 237 Kan. at 137.

The posture of petitioners' cases is quite different. Petitioners' access to the courts has been held open through a series of administrative hearings and procedures.

More than a quarter century ago, we rejected a rigid "hands off" doctrine for judicial supervision of prison administration. *Levier v. State,* 209 Kan. 442, 449, 497 P.2d 265 (1972). In *Levier,* we said:

"Until such time as adequate administrative provision is made for an impartial resolution of factual issues underlying such complaints there is no alternative to judicial inquiry respecting the facts rather than limiting judicial review of administrative actions to its ordinary scope. When appropriate administrative procedures have been established then those remedies will be required to have been exhausted prior to resort to the courts." 209 Kan. at 452.

Administrative disciplinary, grievance, and parole hearing procedures were established in K.A.R. 44-13-101 *et seq.,* K.A.R. 44-14-101 *et seq.,* and K.A.R. 45-4-4 *et seq.* Before seeking judicial review under K.S.A. 1998 Supp. 60-1501, an inmate must exhaust available administrative remedies. See *Fletcher v. Nelson,* 253 Kan. 389, 393, 855 P.2d 940 (1993) (an inmate's mail was withheld); K.S.A. 75-52,138 (statutory requirement on exhaustion of administrative remedies). Decisions directly relating to denial of parole are also reviewed in a habeas corpus action under K.S.A. 1998 Supp. 60-1501. *Swisher v. Hamilton,* 12 Kan. App. 2d 183, Syl. ¶ 2, 740 P.2d 95, *rev. denied* 242 Kan. 905 (1987).

K.S.A. 1998 Supp. 60-1501(b) does not violate the "open courts" principle. K.S.A. 1998 Supp. 60-1501(b) merely limits the time petitioners had to file their 1501 petitions to appeal from the final

administrative disciplinary hearings and denial of parole. The time for filing under 1501(b) is statutorily extended during the pendency of the inmate's timely attempts to exhaust administrative remedies. The petitioners here were well aware of their claims. These inmates had ample opportunity to be heard through extensive administrative procedures and a review by the district court if timely requested.

## Suspending the Writ of Habeas Corpus

K.S.A. 1998 Supp. 60-1501(b) does not bar the right to a writ of habeas corpus. The petitioners maintain that the 30-day time limit is so brief that K.S.A. 1998 Supp. 60-1501(b) impermissibly suspends the habeas writ and thus is unconstitutional on its face.

Because petitioners claim that K.S.A. 1998 Supp. 60-1501(b) is facially unconstitutional they must establish that *no* set of circumstances exist under which the statute would be valid. See *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 850, 942 P.2d 591 (1997).

In support of their habeas suspension claim, petitioners' brief quotes from the argument of Kevin Campbell, counsel for Harris, made in the district court. (Campbell is an attorney for Legal Services for Prisoners, Inc.)

"Now, it is my position that a trained attorney cannot review that many requests for assistance, sort out the meritorious from the frivolous, and proceed to a decision on the meritorious within a 30-day time limit. It is simply an impossible task. This time limit prevents our office from meeting with the inmates and discussing their case and helping them to prepare a petition on their own simply because the 30-day time limit is too short to do that. *Therefore this bill not only does not prevent or serve its intent in preventing frivolous lawsuits, it's my belief it actually generates more of them."* (Emphasis added.)

Campbell's belief regarding the sufficiency of 30 days to file a 1501 motion invites consideration when placed in the context of the constitutional issue here. Campbell's belief suggests to us that the 30-day limitation may represent "the law of unintended consequences." For example: (1) The legislature by enacting 1501(b) intended to reduce the number of frivolous appeals from final administrative discipline and parole denial decisions, (2) 30 days is so

short there is not enough time for understaffed counsel in the office of Legal Services for Prisoners, Inc., to winnow out the frivolous from the nonfrivolous, and so (3) to prevent a habeas appeal from being time barred, the appeal is filed regardless of its merit. Campbell's generation of appeals argument, which is accompanied by a degree of logic, may be of interest to the legislature as a policy issue. However, for our purposes the argument casts doubt on petitioners' claim that 60-1501(b) suspends habeas corpus and, thus, is unconstitutional. Furthermore, simply pointing out that a statute might not be rationally related to the stated objectives sought under one set of facts is not enough to declare the statute unconstitutional on its face. See *Franklin,* 262 Kan. at 851.

Apparently the 30-day limitation in 1501(b) is the shortest limitation period for filing a habeas corpus petition in the country. During oral argument counsel for the D.O.C. responded to a bench question:

"THE COURT: Do you know of any other state that has as short a time as 30 days?

"COUNSEL: Not off the top of my head I don't. I know there have been some states who have inquired or made inquiries to the Secretary regarding that, but I'm not aware of any that do."

The federal habeas limitation period for state prisoners is 1 year. Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, title I, § 101, 110 Stat. 1217 (codified at 28 U.S.C. §§ 2244[d][1]—[d][2] [Supp. III 1997]).

Petitioners argue that prison regulations regarding restricted law library access support their position. The petitioners do not directly challenge the law library regulations, and did not do so below. Thus, the impact of the library regulations is not before us. Petitioners fail to direct us to anything in the record connecting failure to file their individual habeas appeals with inadequate library hours.

We do not find in the three records, the briefs, or oral argument any individualized explanation of why petitioners failed to file within the 1501(b) 30-day period.

The petitioners argue that K.S.A. 1998 Supp. 60-1501(b), on its face, is unconstitutional because the statute has a 30-day limit, and

30 days in the abstract is not long enough. None of the petitioners claim: (1) lack of notice or lack of receipt of the record of the administrative decision (K.A.R. 44-13-505 and 44-13-506 require service and delivery of the record on the inmate at no charge to the inmate. K.A.R. 45-4-7 also requires written notice be delivered to inmates for parole board decisions.); (2) rare and exceptional circumstances that might equitably toll the limitation period; or (3) an argument based on "the interests of justice," "justifiable excuse," or "excusable neglect." We will not strike down K.S.A. 1998 Supp. 60-1501(b) based on abstract claims of unconstitutionality.

We acknowledge the legislature could have adopted a longer statute of limitations to encourage the stated policy of reducing frivolous inmate administrative discipline and parole denial appeals. However, comparing the Kansas Constitution Bill of Rights § 8 prohibition on habeas suspension with the K.S.A. 1998 Supp. 60-1501(b) 30-day limitation we cannot say that the latter does not square with the former. See *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 348-49, 789 P.2d 541 (1990).

We, of course, may at some future time signal a constitutional concern arising from the linkage of the Kansas Constitution Bill of Rights § 8 and K.S.A. 1998 Supp. 60-1501(b) under facts different from those present here. But, based on the records before us, K.S.A. 1998 Supp. 60-1501(b), on its face, is constitutional.

Affirmed.